The decision below is hereby signed.  Dated: May 23, 2006.



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PREMIUM ESCROW SERVICES, INC., | ) | Case No. 02-02358 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| PREMIUM OF AMERICA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10455 |
| WILLIAM C. SANCHEZ and WILLIAM C. SANCHEZ, M.D., P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## DECISION REGARDING DEFENDANTS' MOTION TO DISMISS

Defendants William C. Sanchez, M.D., and William C. Sanchez, M.D., P.C. (collectively the "Defendants") have filed a motion to dismiss this adversary proceeding brought by Premium of America, LLC ("POA") as successor-in-interest to the debtor Premium Escrow Services, Inc. ("PES") with respect to certain claims assigned to POA by former investors of PES (the "Investor-Related Claims").

**EXHIBIT**
tabbies
2

Alternatively, the Defendants request that this court sever the Investor-Related Claims from those claims asserted directly by POA.

The Defendants' argument for dismissal is purely jurisdictional: they assert that the court lacks subject matter jurisdiction over the Investor-Related Claims, and that, to the extent jurisdiction exists, it is the product of collusive efforts by PES and its investors in contravention of 28 U.S.C. § 1359.[1]  In addition, the Defendants urge the court to rule that its jurisdiction over the adversary proceeding is "non-core" within the meaning of 28 U.S.C. § 157.

The court agrees with the Defendants that it lacks subject matter jurisdiction over the Investor-Related Claims, and further agrees that its jurisdiction over the remaining claims in this adversary proceeding is non-core.  Accordingly, the court will grant the Defendant's motion to dismiss in its entirety and will amend its scheduling order to state that its jurisdiction is non-

---

[1]  Section 1359 of title 28 to the U.S. Code states that
> A district court shall not have jurisdiction
> of a civil action in which any party, by
> assignment or otherwise, has been improperly
> or collusively made or joined to invoke the
> jurisdiction of such court.

Although the statute references "district court[s]" specifically, bankruptcy courts are units of their respective district courts, and have jurisdiction over a case only insofar as it referred to them by those district courts.  See 28 U.S.C. § 157(a).  If a district court could not assert jurisdiction over a particular case, a bankruptcy court could not, either.

core.

I

PES is a subsidiary company and co-debtor of Beneficial
Financial Services, Inc. ("Beneficial"), a "viatical settlement
company" that sold interests in life insurance policies formerly
owned by terminally ill patients known as "viators." Upon
soliciting funds from investors, Beneficial would bid for the
right to receive the death benefits of a viator's policy. When
Beneficial was the winning bidder, it would match an investor's
contribution with the purchased interest. Each viaticated
interest would be matched with a number of investors, such that
all of Beneficial's investors owned only fractional interests in
the actual insurance policies.

Beneficial's business model depended on the purchase of life
insurance policies held by viators with short life expectancies;
the shorter the life expectancy, the higher the profit would be
for Beneficial's investors. To that end, Beneficial paid a
number of doctors, including the defendant Dr. Sanchez, to review
the medical file of each viator and make a prediction as to the
probable life span of that viator. Beneficial would then share
the conclusions drawn by the examining physician with its
investors as part of a "summary package" prepared after the
closing on each viaticated policy.

Initially, Beneficial retained a series of individual escrow

3

agents to serve as the title holder for all of its purchased interests, pay the monthly premiums on those interests, and collect on the interests when a viator died. This process proved to be inefficient, so in 2001 Beneficial created PES to function as a permanent escrow agent. PES served in that role until its bankruptcy in 2002.

Beneficial's business ultimately proved unsuccessful, due in large part to the unexpectedly long life span of many of the viators whose policies Beneficial purchased. Put simply, too many viators lived too long for Beneficial to make any money off of its purchased interests. Beneficial filed for bankruptcy on November 20, 2002. PES followed suit on December 9, 2002.²

The court entered an order procedurally consolidating the two cases on June 26, 2003. Separate plans of reorganization for Beneficial and PES were confirmed on August 12, 2003. PES's plan called for the creation of a new corporation--POA--that would administer PES's remaining viaticated insurance policies.

As is typical in the creation of a successor company like POA, the debtor's plan of reorganization provided for the transfer of all causes of action held by PES to the new entity.

---

² PES filed its bankruptcy petition several years before Congress passed and enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 (effective Oct. 17, 2006) ("BAPCPA"). Accordingly, all references to titles 28 and 11 of the U.S. Code are to the pre-BAPCPA version of those titles.

4

The plan also provided that investors who still held interests in life insurance policies viaticated through Beneficial would assign their claims to POA in exchange for ownership interests in the new company proportionate to their prior interests.  This transfer consolidated all of the fractional interests held by PES's investors in one entity--the successor corporation--thereby improving the chances of recovery on outstanding policies overall (e.g., by eliminating the risk that one owner of a fractional interest in a policy would fail to pay the owner's pro rata share of the monthly premium, which would cause every fractional interest holder to default on the premium). It also allowed POA to assert the claims of all of PES's former investor-creditors as well as PES itself, thus streamlining recovery of assets for those creditors as a whole.

The claims assigned to POA include the claims of PES's investors against Dr. Sanchez and his medical practice for negligence and misrepresentation.  The Defendants challenge the propriety of the investors' assignment of claims as well as the jurisdiction of this court in general.

II

Although the Defendants move for dismissal of the complaint against them specifically under FED. R. CIV. P. 12(b)(6) (as incorporated by FED. R. BANKR. P. 7012), the court construes their request as a motion for dismissal under FED. R. CIV. P. 12(b)(1)

instead. "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with <u>res judicata</u> effect." <u>Al-Owhali v. Ashcroft</u>, 279 F. Supp. 2d 13, 20 (D.D.C. 2003).

In most cases,[3] "[a] complaint may be dismissed on jurisdictional grounds only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Loughlin v. United States</u>, 393 F.3d 155, 162 (D.C. Cir. 2004) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Accordingly, the court will treat the Defendants' arguments in the same way that it would an argument raised in a Rule 12(b)(6) motion. See <u>Price v. Socialist People's Libyan Arab Jamhiriya</u>, 294 F.3d 82, 93 (D.C. Cir. 2002).

---

[3] Certain types of challenges under Rule 12(b)(1) can be "'on the factual truthfulness of [the complaint's] averments,'" <u>Al-Owhali</u>, 279 F. Supp. 2d at 20 (quoting <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993)). For this latter type of challenge, "[a] dismissal pursuant to FED. R. CIV. P. 12(b)(1) is proper where a plaintiff fails to establish by a preponderance of the evidence that subject matter jurisdiction exists." <u>Martin v. EPA</u>, 271 F. Supp. 2d 38, 43 (D.D.C. 2002). "The court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in this case." <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).

The Defendants' motion raises both a challenge to the court's jurisdiction based on the face of POA's complaint and a factual challenge to the court's jurisdiction under 28 U.S.C. § 1359. Because the court must dismiss the Investor-Related Claims based on the facts as pled in POA's complaint, however, there is no need to make a factual inquiry into the Defendants' "collusiveness" argument.

A.    Post-Confirmation Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction.  They possess only the power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  "[F]ederal jurisdiction over the bankruptcy case or proceeding must exist pursuant to 28 U.S.C. § 1334, which is a broad grant of jurisdiction."  In re U.S. Office Products Co. Sec. Litig., 313 B.R. 73, 79 (D.D.C. 2004). Section 1334 confers two types of jurisdiction: (1) "original and exclusive jurisdiction of all cases under title 11," 11 U.S.C. § 1334(a); and (2) "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Id. at § 1334(b).[4]

"The first category [of jurisdiction] refers to the bankruptcy petition itself."  U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.), 301 F.3d 296, 303-04 (5th Cir. 2002); accord In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991).  As for the first two bases for jurisdiction found in § 1334(b), "[a] claim 'arises under' title 11 if the claim is made pursuant to a provision of title 11," In re U.S. Office Products Co. Sec. Litig., 313 B.R. 73, 79 (D.D.C. 2004), and "[c]laims 'arising in' a case under title 11 are limited to

---

[4]  Section 157 of title 28 of the U.S. Code, in turn, permits a district court to refer such cases "to the bankruptcy judges for the district."  11 U.S.C. § 157(a).

'administrative matters that arise only in bankruptcy cases and
have no existence outside of the bankruptcy proceeding.'" Id.
(quoting Atkinson v. Kestell, 954 F. Supp. 14, 16 (D.D.C. 1997)
(further citation omitted)).  Finally, with respect to so-called
"related to" jurisdiction under § 1334(b), "the test is 'whether
the outcome of that proceeding could conceivably have any effect
on the estate being administered in bankruptcy.'"  Id. at 80
(quoting Atkinson, 954 F. Supp. at 16 (further citation
omitted)).

         1.   Post-confirmation jurisdiction in general

    Prior to the confirmation of a debtor's plan of
reorganization, an action to recover funds for the estate easily
satisfies the criteria for "related to" jurisdiction because the
recovery of such funds increases the size of the estate and
improves the potential for and quantity of distributions to
creditors.  But "once confirmation occurs, the bankruptcy court's
jurisdiction shrinks," Penthouse Media Group v. Guccione (In re
Gen. Media, Inc.), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005),
because "[a]t the most literal level, it is impossible for the
bankrupt debtor's estate to be affected by a post-confirmation
dispute" once the estate re-vests in the reorganized debtor
pursuant to 11 U.S.C. § 1141.  Binder v. Price Waterhouse & Co.,
LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 165 (3d Cir.

2004).[5]

"Consequently, a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements." In re Gen. Media, Inc., 335 B.R. at 73. "First, the matter must have a close nexus to the bankruptcy court or proceeding, as when a matter affects the interpretation, implementation, consummation, execution[,] or administration of the confirmed plan[,] and second, the plan must provide for the retention of jurisdiction over the dispute." Kassover v. Prism Venture Partners, LLC (In

---

[5] See also In re Gen. Media, Inc., 335 B.R. at 75 ("Bankruptcy courts plainly lack subject matter jurisdiction over post-confirmation litigation where the case has been fully administered and all of the recovery will go to the reorganized debtor rather than to the creditors."). Although not germane to the instant case, the court questions the suggestion in Resorts International that there is no § 1334 post-confirmation jurisdiction over estate causes of action that re-vest in the debtor pursuant to a plan even when the proceeds of those causes of action will facilitate payments to the debtor's creditors. Under those circumstances, the debtor's status is more akin to that of a debtor-in-possession than a reorganized debtor, and as such should be treated no differently than any other representative of the estate. See discussion, infra; see also Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp., I), 333 B.R. 506, 536-37 (Bankr. D.D.C. 2005) (recognizing that a debtor who is required to make payments to creditors retains the character of a debtor-in-possession exercising trustee powers on behalf of creditors even after the debtor's plan is confirmed).

Indeed, one could argue that a court has post-confirmation jurisdiction over a reorganized debtor's pursuit of estate causes of actions even if all plan payments to creditors are made upon the plan's effective date. The creditors presumably received some form of quid pro quo in exchange for allowing the debtor to retain these causes of action post-confirmation (e.g., a higher pro rata distribution under the debtor's plan), and therefore benefit indirectly from the debtor's pursuit of those claims. See In re Greater Southeast Cmty. Hosp. Corp., I, 333 B.R. at 536-37.

9

re Kassover), 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2004). "At the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process--there must be a close nexus to the bankruptcy plan or proceeding." In re Resorts Int'l, Inc., 372 F.3d at 167.

Applying this two-part test, the first question before the court is whether the instant adversary proceeding is "integral" enough to fall within the court's jurisdiction when "[t]he only nexus to this bankruptcy case is that the plaintiff in this matter is [an entity] representing a group of creditors appointed pursuant to the confirmed plan of reorganization." Id. at 168 (quoting Grimes v. Graue (In re Haws), 158 B.R. 965, 971 (Bankr. S.D. Tex. 1993)). Some courts have found this purported "nexus" to be insufficient. See, e.g., id. at 168-71; In re Haws, 158 B.R. at 967-71. Other courts appear to have reached the opposite conclusion. See, e.g., Mont. v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1194 (9th Cir. 2005); Guttman v. Martin (In re Railworks Corp.), 325 B.R. 709, 722-24 (Bankr. D. Md. 2005).

In Resorts International, the Third Circuit Court of Appeals held that a malpractice suit filed by a litigation trust created pursuant to the debtor's plan had a "more attenuated" connection to the debtor's case because "[t]he Trust beneficiaries . . . traded their creditor status as claimants to

10

gain rights in the Litigation Trust's assets," 372 F.3d at 170,
and thus "no longer ha[d] the same connection to the bankruptcy
proceeding as when they were creditors of the estate." Id. The
court explained its conclusion as follows:

> Though the Litigation Trust's assets, the
> proceeds from the litigation claims, were
> once assets of the estate, that alone does
> not create a close nexus to the bankruptcy
> plan or proceeding sufficient to confer
> bankruptcy jurisdiction. The Litigation
> Trust's connection to the bankruptcy is not
> identical to that of the estate. Under
> section 1.1 of the Litigation Trust, the
> debtor "absolutely assigned to the Trustee
> and to its successors and assigns, all right,
> title and interest of the Reorganizing
> Entities in and to the Litigation Claims."
> Moreover, the Litigation Trust was created in
> part so that the Plan could be confirmed and
> the debtor freed from bankruptcy court
> oversight without waiting for the resolution
> of the litigation claims. The deliberate act
> to separate the litigation claims from the
> bankruptcy estate weakens the Trustee's claim
> that the Litigation Trust has the same
> jurisdictional nexus as that of the estate.

Id. at 169.

In contrast, the bankruptcy court in Railworks Corporation

concluded that:

> [Where] the implementation of the payment of
> unsecured creditors through claims prosecuted
> by [a] [l]itigation [t]rustee is precisely at
> issue, [it] falls squarely in the realm of
> limited jurisdiction that a bankruptcy court
> may hear.

In re Railworks Corp., 325 B.R. at 723. The bankruptcy court
retained jurisdiction, in that court's view, because the

11

"[d]ebtors' confirmed [p]lan contemplate[d] that the Litigation Trust Claims w[ould] not re[-]vest with confirmation of the plan, [but] rather specifically set[] forth the retention of these causes of action." Id. at 722.

Unlike the Resorts International court, which held that the creation of a litigation trust "weaken[ed]" a claim to post-confirmation jurisdiction, the Railworks Corporation court concluded that the presence of a litigation trust actually established a "nexus" between the dispute before the court and the debtor's estate because a litigation trustee "represent[ed] the estate by assuming the obligations to prosecute the instant claims for the benefit of unsecured creditors." Id. at 719. In the words of the court:

> [B]ecause both a bankruptcy trustee and a post-confirmation representative, the Litigation Trustee, derive their standing from the same source, namely, their capacity as representatives of the estate, the post-confirmation Litigation Trustee possesses the same standing as that of a trustee during the existence of the estate.

Id.

It is not entirely clear whether the Resorts International and Railworks Corporation courts actually contradict each other or simply address different factual situations. In Resorts International, the dispute before the court was a malpractice action brought by the litigation trust against its former legal counsel. Wary of imposing a rule conferring "unending

12

jurisdiction" over the trust, In re Resorts Int'l, Inc., 372 F.3d at 167, the Third Circuit sought to draw a distinction between causes of action arising post-petition but pre-confirmation, which remain subject to bankruptcy court oversight, and causes of action arising post-confirmation, which do not. Id. The Railworks Corporation involved a much more straightforward cause of action that originally belonged to the debtor and was transferred to a litigation trust pursuant to the terms of the debtor's plan. 325 B.R. at 723.

At the same time, there are important differences in the way that the courts in Resorts International and Railworks Corporation described the respective trusts before them that suggest deeper disagreements. For the Resorts International court, a creditor of the estate who trades in her claim for a pro rata interest in a litigation trust created by the plan forfeits her status as a creditor altogether. 372 F.3d at 169. This suggests that when a plan with a provision creating a litigation trust goes into effect, the estate re-vests entirely into either the reorganized debtor or the litigation trust. A bankruptcy court would therefore only have post-confirmation jurisdiction over disputes relating to the interpretation of the debtor's plan of reorganization or over claims "arising under" or "arising in" the debtor's bankruptcy case, such as a preference action under 11 U.S.C. § 547 or an objection to claim filed pursuant to 11

13

U.S.C. § 502.

In contrast, the Railworks Corporation court clearly perceived a litigation trust to be a "representative of the estate" who "takes on a capacity similar to that of a trustee" with respect to "the vestige of the estate" preserved for court oversight in the debtor's plan pursuant to 11 U.S.C. § 1123. 325 B.R. at 719. Under this approach, the confirmation of a plan would re-vest the reorganized debtor with the property of the estate except for the property vested in the litigation trust, which would continue to function as property of the estate. Because an action formerly belonging to the debtor and now vested in the litigation trust would still benefit the estate's creditors, the bankruptcy court would still have "related to" jurisdiction over the dispute.

To the extent that the Resorts International court actually intended to suggest that a bankruptcy court lacks "related to" jurisdiction over litigation trusts altogether, this court respectfully disagrees with the Third Circuit. As the bankruptcy court in Railworks Corporation correctly noted, § 1123 of the Bankruptcy Code permits a bankrupt debtor to craft a plan of reorganization that leaves some causes of action in the debtor's estate while vesting others in the reorganized debtor. See In re Railworks Corp., 325 B.R. at 715; see also 11 U.S.C. § 1123(b)(3). Moreover, the statute explicitly states that the

14

court may permit any "representative of the estate," not just the
debtor or the trustee, to retain and enforce the claims reserved
to the estate.  11 U.S.C. § 1123(b)(3)(B).

Nor does it make any difference that a debtor's creditors
are classified as "investors" for purposes of the agreement
governing the operation of the plan's litigation trust.  Section
1123 permits a court to retain jurisdiction pursuant to the terms
of a plan whenever the court appoints a representative to enforce
the "claim[s] or interest[s]" of the debtor's estate.  A debtor's
estate is "comprised" of, inter alia, "all legal or equitable
interests of the debtor in property as of the commencement of the
case."  11 U.S.C. § 541(a).  So long as the plan expressly vests
a court-appointed entity with estate property under the court's
oversight, that property remains the debtor's "estate" for
purposes of 28 U.S.C. § 1334.  Whether the estate's beneficiaries
are labeled "creditors" or "investors" is beside the point.

But there are limits to the scope of jurisdiction that a
plan can confer.  If a litigation trust prosecutes a cause of
action that did not belong to the debtor or the debtor's estate
prior to confirmation, that cause of action belongs to the
litigation trust personally rather than in its capacity as
representative of the debtor's estate.  As a personal cause of
action rather than a cause of action wielded on behalf of the
estate, such a claim is not subject to a court's jurisdiction

15

under 28 U.S.C. § 1334.

The Resort International court was therefore right to hold that it lacked jurisdiction over the malpractice cause of action asserted by the litigation trust in that case, although its reasoning in support of that holding was flawed. In contrast, the claim at issue in Railworks Corporation was a pre-petition cause of action that originally belonged to the debtor and became part of the estate upon the filing of the bankruptcy petition in that case. Because the debtor's plan specifically preserved the court's jurisdiction over that claim and the claim did not re-vest in the debtor free and clear of court supervision and creditor recovery pursuant to § 1141, the bankruptcy court properly exercised post-confirmation jurisdiction over the claim.

In sum, a bankruptcy court can exercise post-confirmation jurisdiction over a claim raised by a litigation trust, liquidating trust, or other successor entity to the debtor if the successor entity satisfies the requirements of § 1123. The court must now decide whether POA's assertion of the Investor-Related Claims meets these criteria.

2.   Post-confirmation jurisdiction in this case

As the Railworks Corporation court correctly noted, § 1123 preserves the jurisdiction of the bankruptcy court where three requirements are met. First, "the plan must retain the claims to be asserted post-confirmation." In re Railworks Corp., 325 B.R.

16

at 715.  Second, "if the person seeking to enforce the claim is a
stranger to the estate, the person must be appointed and be a
representative of the estate" to comply with the text of § 1123.
Id.  Finally, "[t]he claims that are being reserved by the plan
for later enforcement and adjudication must belong to the estate
or to the debtor" because "the plan may only preserve those
claims that a trustee in bankruptcy, or a debtor in possession,
could have asserted prior to confirmation."  Id.

(a)    Scope of the debtor's plan of reorganization

PES's confirmed plan of reorganization preserves this
court's jurisdiction over any action to "[c]onsider and act on
the compromise and settlement of any Claim or cause of action by
or against the Debtor's estate" (Plan § 10.7) (emphasis added).
Thus, the first prong of the Railworks Corporation test will be
met if the Investor-Related Claims were a part of PES's estate at
the time of confirmation--the third prong in the Railworks
Corporation analysis.  The court thus turns to the second and
third prongs of the Railworks Corporation test.

(b)    The "representative of the estate"
requirement

The court concludes that POA is a "representative of the
estate" within the meaning of § 1123.  "[C]ourts apply a case-by-
case analysis to determine whether [an] appointed party's
responsibilities qualify it as a representative of the estate."
McFarland v. Leyh (In re Texas Gen. Petroleum Corp.), 52 F.3d

1330, 1335 (5th Cir. 1995). "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly[] the debtor's unsecured creditors." Citicorp Acceptance of Co., Inc. v. Robison (In re Sweetwater), 884 F.2d 1323, 1327 (10th Cir. 1989) (internal quotation omitted).

The traditional emphasis placed by courts on the finding that unsecured creditors benefit from a putative representative's recovery is not arbitrary. Rather, it ensures "that the proceeds recovered [by the representative] satisfy the claims of priority and general unsecured creditors before the debtor benefits." In re Texas Gen. Petroleum Corp., 52 F.3d at 1335. Consequently, "the benefit [to unsecured creditors] may come from the transfer of the claim itself through, for example, settlement yielding a benefit to the unsecured creditors." Official Comm. of Unsecured Creditors of Maxwell Newspapers, Inc. v. MacMillan, Inc. (In re Maxwell Newspapers, Inc.), 189 B.R. 282, 287 (Bankr. S.D.N.Y. 1995).

POA meets this requirement. Although its recoveries do not benefit PES's unsecured creditors directly, such recoveries do not help the debtor, either. Instead, recoveries benefit only a certain class of PES's creditors (its investors), thereby ensuring that the debtor's estate, rather than the debtor itself, benefits from POA's existence.

18

Moreover, PES's plan provided for a pro rata payment of
$10,000.00 to PES's unsecured creditors and the payment of $1.7
million to PES's affiliated debtors for distribution to the joint
priority and unsecured creditors of Beneficial and its affiliated
debtors (including PES).  These payments could not have been made
without the creation of POA and the concomitant assignment of the
claims against the Defendants (the Investor-Related Claims) held
by its investors.  Because this court approved the "appointment"
of POA when it confirmed the plan creating and defining that
entity, and because recoveries made by POA benefit PES's
creditors rather than PES itself, POA qualifies as a
"representative of the estate" under § 1123.

(c)   Transfer of property of the estate

It is the third prong of the Railworks Corporation test--
namely, whether the cause of action over which the court asserts
post-confirmation jurisdiction originated as property of the
debtor or the debtor's estate--that proves to be POA's downfall.[6]

---

[6]  Although the court will dismiss the Investor-Related
Claims based on the court's application of the third prong of the
Railworks Corporation standard, that does not render its analysis
of the second prong of that test superfluous.  Had the court
concluded that POA does not qualify as a "representative of the
estate" for purposes of § 1123, it would have been necessary to
dismiss all of the claims raised by POA in this adversary
proceeding rather than just the Investor-Related Claims.  Because
this court has a sua sponte obligation to inquire as to the basis
of its subject matter jurisdiction, Doe by Fein v. District of
Columbia, 93 F.3d 861, 871 (D.C. Cir. 1996), the court's
determination of the propriety of POA's suit based on the claims
transferred by PES was a necessary one.

POA's claims against the Defendants come from two sources: PES,
which transferred its claims against the Defendants to POA
pursuant to § 7.1.1(b) of PES's plan, and PES's investors, who
transferred their separate claims against the Defendants pursuant
to § 3.1.2 of the plan.

The PES claim was property of the estate and therefore falls
within this court's post-confirmation jurisdiction.[7]  The
Investor-Related Claims, on the other hand, belonged to the
debtor's creditors, not the debtor or its estate.  They could not
have been "retained" by the debtor's plan because they were never
a part of the estate in the first instance.[8]  The claims simply
do not "relate[] to" the debtor's estate.

---

[7]   It is unclear whether PES would have had standing to
bring an action against the Defendants for negligence and
misrepresentation, thus calling into question whether the instant
adversary proceeding is still viable given the court's dismissal
of the Investor-Related Claims.  Presumably, the Defendants will
move for dismissal under FED. R. CIV. P. 12(b)(6) (as incorporated
by FED. R. BANKR. P. 7012) if they believe that POA cannot state a
cause of action using only the rights assigned to it by PES.
Unless and until such a motion is filed, the court will assume
that POA's claim against the Defendants is still valid.

[8]   Theoretically, PES's investors could have transferred
their claims against third party defendants to the estate prior
to the confirmation date of the debtor's plan in exchange for
shares in a successor corporation to be created pursuant to the
plan.   But this would have robbed the investors of their creditor
status with respect to PES prior to confirmation of the plan,
making it highly questionable whether POA could have qualified as
a "representative of the estate" given that its recoveries would
have benefitted third parties that no longer had any connection
to the debtor's estate.

B.    Other Statutory Bases for Jurisdiction

This court retains jurisdiction over PES's claims against the Defendants even though they were transferred to POA pursuant to PES's plan.  The court cannot, however, exercise jurisdiction in the first instance over the Investor-Related Claims pursuant to 28 U.S.C. § 1334.  The only remaining question is whether there is any separate statutory basis for the court to assert jurisdiction over the Investor-Related Claims.

1.    Supplemental jurisdiction under 28 U.S.C. § 1367

POA's best hope is 28 U.S.C. § 1367, which gives federal courts "supplemental" jurisdiction over certain matters.  Section 1367 states in pertinent part:

> [I]n any civil action which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

With notable exceptions in the Ninth and Second Circuits,[9] federal courts at all levels have concluded that bankruptcy courts cannot invoke § 1367 as a basis for subject matter jurisdiction.[10] Most of these courts look to the text of 11 U.S.C. § 157(a), which permits district courts to refer only cases "arising under," "arising in," or "related to" a chapter 11

---

[9] See Klein v. Civale & Trovato, Inc. (In re Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994) (holding that bankruptcy court could assert subject matter jurisdiction "under principles of supplemental jurisdiction"); Davis v. Courington (In re Davis), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) (same); but see Wilcox v. Houghton (In re Houghton), 164 B.R. 146, 147-48 (Bankr. W.D. Wash. 1994) (holding that bankruptcy courts cannot expand upon the jurisdiction conferred upon them by 28 U.S.C. §§ 1334 and 157 "without running afoul of the Constitution"). Although the Houghton decision was contradicted by the Ninth Circuit Bankruptcy Appellate Panel's decision in Davis, its reasoning is, in this court's view, far superior to that of the Davis panel's decision. As for the Lionel Corp. holding, the court's offhand invocation of § 1367, coupled with the complete absence of any reasoning in support thereof, leads this court to suspect that the Second Circuit did not fully consider the complexity of the issue before it when it rendered its decision, and in any event is so devoid of reasoning that it is not persuasive in the slightest.

[10] See, e.g., Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 570-73 (5th Cir. 1995) (holding that bankruptcy courts cannot utilize § 1367); Halvajian v. Bank of New York, 191 B.R. 56, 58-59 (D.N.J. 1995) (same); Sec. Investor Protection Corp. v. Murphy (In re Selheimer & Co.), 319 B.R. 384, 390 (Bankr. E.D. Pa. 2005) (same); Banc of America Inv. Serv. v. Fraiberg (In re Conseco), 305 B.R. 281, 286-87 (Bankr. N.D. Ill. 2004) (same); Davis v. Victor Warren Properties, Inc. (In re Davis), 216 B.R. 898, 902 (Bankr. N.D. Ga. 1997) (same); Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201 B.R. 1, 6-7 (Bankr. D. Me. 1996) (same); Gates v. Didonato (In re Gates), 2004 WL 3237345, *3 (Bankr. E.D. Va. Oct. 20, 2004) (same).

22

case to bankruptcy courts, to justify this conclusion.[11]  Because
§ 157(a) appears to restrict the district courts' ability to
transfer matters to bankruptcy courts to those proceedings over
which the district courts have jurisdiction pursuant to § 1334,
these courts have concluded that bankruptcy courts cannot assert
supplemental jurisdiction under § 1367.

Section 157(a) is not the only possible impediment to a
bankruptcy court's use of § 1367.  Congress does not have carte
blanche to give the judiciary whatever jurisdiction it wants.
Instead, "[t]he federal courts' subject matter jurisdiction, to
the extent Congress authorizes it, is derived directly from
Article III, Section 2, extending the judicial 'Power' to 'all
Cases in Law and Equity arising under this Constitution, the Laws
of the United States . . . .'" LaShawn A. v. Barry, 87 F.3d 1389,
1396 (D.C. Cir. 1996) (en banc) (quoting U.S. CONST. ART. III

---

[11] See, e.g., In re Walker, 51 F.3d at 573 ("Absent from
[§ 157] is any indication that district courts may refer to
bankruptcy courts any cases that were before the district courts
only on the basis of supplemental jurisdiction. . . . [T]here is
nothing in the jurisdictional statutes to indicate that the
district court could refer such a case to a bankruptcy court.");
In re Conseco, 305 B.R. at 287 ("The bankruptcy court has no
grant of authority from the district court beyond the three types
of jurisdiction identified in § 157(a).  Therefore, although the
district court . . . could properly exercise ancillary
jurisdiction (which it now would probably refer to as
supplemental jurisdiction under § 1367(a)), the court concludes
that a bankruptcy court may not."); In re Goldstein, 201 B.R. at
7 ("Nowhere does § 157(a) authorize the district court to
delegate more than 'arising under,' 'arising in[,]' and 'related
to' bankruptcy jurisdiction to the bankruptcy court.").

23

§ 2).[12]

The Supreme Court "has long adhered to principles of [supplemental] jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'" City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164-65 (1997) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). "The doctrine of [supplemental] jurisdiction rests on the idea that the court's jurisdiction over the underlying claim brings the related pendent claims under the scope of Article III because they are part of the same 'case' or 'controversy.'" LaShawn A., 87 F.3d at 1396 (citing Gibbs, 383 U.S. at 725). "Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading." Int'l College of Surgeons, 522 U.S. at 165.

The rule set forth in Gibbs--that a "case" for Article III

---

[12] Bankruptcy courts are created pursuant to Congress's authority under Article I of the Constitution, not Article III. But this only gives bankruptcy courts less jurisdiction than their Article III brethren, not more. See note 17, infra.

24

purposes includes not only federal claims, but also state claims inextricably linked to federal claims--permits federal courts to use § 1367 in a constitutionally valid manner. Employing § 1367 and § 1334 conjunctively, however, arguably stretches the Gibbs formulation beyond its limits. By hearing "'claims which[,] in effect, merely relate to claims which themselves have only a relate-to connection with the primary case,'" In re Walker, 51 F.3d at 573 (quoting In re Alpha Steel Co., Inc., 142 B.R. at 471),[13] a court would in effect consider matters that are not part of a "common nucleus of operative fact" with the underlying

---

[13]   The Walker court, among others, has pointed out the inherent tension between § 1367 and § 1334, suggesting that the two statutes should be viewed as exclusive of one another:

> As several courts have commented, "there are . . . strong . . . arguments to support the position that the 'relate to' and 'arising in' jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent Congress intended, all supplemental claims that have a logical relationship to an underlying bankruptcy proceeding."
>
> . . .
>
> Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and "the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous."

In re Walker, 51 F.3d at 572 (quoting In re Houghton, 164 B.R. at 148, and Southtrust Bank v. Alpha Steel Co. (In re Alpha Steel Co.), 142 B.R. 465, 471 (M.D. Ala. 1992)).

federal law claims, Gibbs, 383 U.S. at 725, and therefore are not part of the "case" before the court for purposes of Article III. Such claims would thus arguably fall outside the purview of the federal judiciary. See Susan Block-Lieb, The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis, 62 FORDHAM L. REV. 721, 757-799 (Feb. 1994) (discussing the constitutional problems inherent in using § 1334 and § 1367 together).

It could be argued that once a court acquires jurisdiction over a particular claim--whether via diversity jurisdiction, federal question jurisdiction, or bankruptcy jurisdiction--state law claims closely connected to that claim form part of the "case" before the court for purposes of the Gibbs rule embodied in § 1367 as well. This argument assumes, however, that claims falling within a court's "related to" jurisdiction under § 1334 "aris[e] under" the constitutional case before the court (here, the debtor's title 11 case), thereby satisfying the requirement set forth in Gibbs that there be a "substantial" federal question around which supplemental jurisdiction can be asserted. See Gibbs, 383 U.S. at 725 (holding that, for a court to assert supplemental jurisdiction over state law claim, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court"). This assumption may not be valid. See Block-Lieb, 62 FORDHAM L. REV. at 776-79 ("The contention that

all 'arising in' and 'related to' proceedings are a form of constitutional 'arising under' jurisdiction is a controversial one.").[14]

In any event, this issue only applies to federal district courts attempting to invoke § 1367 in bankruptcy cases. The court's ruling today necessarily concerns only such jurisdiction as can be transferred by a district court to this court pursuant to § 157. Plainly, claims that can be heard only pursuant to § 1367 do not fall into this category. POA cannot invoke § 1367 before this court.

2.   Supplemental jurisdiction under 28 U.S.C. § 1334

Another argument for allowing this court to exercise supplemental jurisdiction over the Investor-Related Claims has

---

[14]   The issue boils down to what the constitutional "case" before the court embodies under Gibbs. When viewed through the prism of the paradigm of a liquidation case (sometimes referred to as "straight bankruptcy"), the bankruptcy case necessarily involves liquidation of claims belonging to the estate. The framers of the Constitution arguably would have viewed liquidation of such claims as part of the bankruptcy power arising under the Constitution. Article III, in other words, arguably can be read as embracing a power in Congress to vest the federal judiciary with jurisdiction over the liquidation of assets owned by a debtor, such that those claims are a constitutional "case" under Gibbs. If such claims are treated as part of the bankruptcy case at the outset of the analysis (instead of as added on as related to the petition), then the constitutional issue disappears in applying § 1367 to such claims when they are liquidated by the district court. When, however, a claim is not property of the estate, and is "related to" the case only because it has some other impact on the administration of the case, it is more difficult to argue that the claim is part of the constitutional "case" under Gibbs.

27

SEG_HEADER

nothing to do with § 1367 at all, but rather concerns § 1334 and
the commonly accepted definition of "related to" jurisdiction
found in sub-section (b) of that statute. As noted above, courts
in this district have adopted the definition of "related to"
jurisdiction first set forth by the Third Circuit in the seminal
case of <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (3d Cir. 1984). <u>See</u>
<u>Atkinson</u>, 954 F. Supp. at 16 (adopting the <u>Pacor</u> definition of
"related to" jurisdiction). To wit:

> The usual articulation of the test for
> determining whether a civil proceeding is
> related to bankruptcy is whether the outcome
> of that proceeding could conceivably have any
> effect on the estate being administered in
> bankruptcy. . . . An action is related to
> bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or
> freedom of action (either positively or
> negatively) and which in any way impacts upon
> the handling and administration of the
> bankrupt estate.

<u>Pacor</u>, 743 F.2d at 994 (emphasis removed).

The vast majority of circuit courts have adopted the <u>Pacor</u>
formulation,[15] and the Supreme Court seems to approve of it, as

---

[15] <u>See</u> <u>Boston Reg'l Med. Center, Inc. v. Reynolds (In re</u>
<u>Boston Reg'l Med. Center, Inc.)</u>, 410 F.3d 100, 105 (1st Cir.
2005); <u>New Horizon of NY, LLC v. Jacobs</u>, 231 F.3d 143, 150-51
(4th Cir. 1995); <u>Arnold v. Garlock, Inc.</u>, 278 F.3d 426, 434 (5th
Cir. 2001); <u>Lindsey v. O'Brien, Tanski, Tanzer and Young Health</u>
<u>Care Providers of Conn. (In re Dow Corning, Corp.)</u>, 86 F.3d 482,
489-90 (6th Cir. 1996); <u>Nat'l Fire Ins. Co. of Pittsburgh, Pa. v.</u>
<u>Titan Energy, Inc. (In re Titan Energy, Inc.)</u>, 837 F.2d 325, 329-
30 (8th Cir. 1988); <u>Gardner v. United States (In re Gardner)</u>, 913
F.2d 1515, 1518 (10th Cir. 1990); <u>Miller v. Kemira, Inc. (In re</u>
<u>Lemco Gypsum, Inc.)</u>, 910 F.2d 784, 788 (11th Cir. 1990).

well.  See Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6
(1995).  The Ninth Circuit, however, has held that § 1334 not
only confers subject matter jurisdiction over proceedings that
affect the administration of the debtor's estate, but "also
includes the district court's supplemental jurisdiction pursuant
to 28 U.S.C. § 1367 'over all other claims that are so related to
claims in the action within [the court's] original jurisdiction
that they form part of the same case or controversy under Article
III of the United States Constitution.'" Sasson v. Sokoloff (In
re Sasson), 424 F.3d 864, 869 (9th Cir. 2005) (quoting In re
Pegasus Gold Corp., 394 F.3d at 1195).[16]

    At first blush, the approach taken by the Ninth Circuit in
Sasson appears to overcome all of the problems created by

_____

[16]    The Ninth Circuit seemingly adopted the Pacor standard
for "related to" jurisdiction in American Hardwoods, Inc. v.
Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d
621 (9th Cir. 1989).  See id. at 623.  Beginning in Pegasus Gold,
however, the Ninth Circuit has shifted towards an even more
inclusive definition of § 1334 than the exceedingly broad
definition set forth in Pacor.  Indeed, at least one bankruptcy
court within the Ninth Circuit has explicitly rejected the Pacor
standard based on the Ninth Circuit's ruling in Cowen v. Kennedy
(In re Kennedy), 108 F.3d 1015 (9th Cir. 1997), where the court
held that a bankruptcy court could enter a monetary judgment on a
non-dischargeable debt notwithstanding the fact that such a
judgment had no impact on the estate.  See Pierce v. Conseco Fin.
Servicing Corp. (In re Lockridge), 303 B.R. 449, 454-55 (Bankr.
D. Ariz. 2003); see also Ralph Brubaker, On the Nature of Federal
Bankruptcy Jurisdiction: A General Statutory and Constitutional
Theory, 41 WM. & MARY L. REV. 743, 859-68 (2000) (arguing that
"related to" jurisdiction under § 1334 was intended to include
cross-claims that were traditionally considered within a court's
ancillary or pendent jurisdiction).

allowing bankruptcy courts to invoke § 1367 in one fell swoop. If supplemental jurisdiction in a bankruptcy case derives from § 1334(b) rather than § 1367, that jurisdiction can be referred to bankruptcy courts under the plain language of § 157. And if matters ordinarily falling within a court's jurisdiction under § 1367 relate to a debtor's bankruptcy case, the constitutional concerns raised above would dissipate because the supplemental matters would relate directly to the debtor's bankruptcy case, not just a proceeding that itself merely "relates to" the bankruptcy case.

The problem with the Ninth Circuit's approach is that it focuses on the wrong proceeding in determining whether a specific claim relates to the debtor's case. Unlike an ordinary civil action between two parties, where the "case" consists of a discrete dispute between a set of parties, the "case" in a bankruptcy proceeding is the debtor's bankruptcy case, which may not involve any disputes between parties at all. Consequently, the only type of claims that could possibly be "related to" such a case for purposes of § 1334 would be those claims that affect the administration of the property of the estate; i.e., those claims falling with the Pacor definition of "related to" jurisdiction.

The Sasson court neatly sidestepped this issue by linking the "supplemental" claim in that case to a specific adversary

30

proceeding, rather than the debtor's case itself. See 424 F.3d at 869.[17] But § 1334 by itself does not permit this court (or the district court) to hear matters that relate to adversary proceedings. The statute quite clearly restricts the court's jurisdiction to matters relating to "cases under title 11," 11 U.S.C. § 1334(b), which "refers to the bankruptcy petition itself." In re U.S. Brass Corp., 301 F.3d at 303-04. If a matter only relates to a "related to" adversary proceeding, § 1367 is the only possible vehicle for any attempt by a court to find jurisdiction over such a matter. Whether it is constitutional to use § 1367 in such a manner is a distinct issue, which the court has already addressed at length above.

"Judicial economy itself does not justify federal

---

[17] Like the Kennedy case, Sasson concerned a non-dischargeability proceeding where the bankruptcy court entered a monetary judgment in addition to its judgment that the debtor's underlying debt was non-dischargeable. 424 F.3d at 866-67. The Ninth Circuit held that the bankruptcy court could enter a monetary judgment on the state law cause of action asserted by the creditor under ordinary notions of supplemental jurisdiction. Id. at 869.

This result is not necessarily wrong. Unlike the instant proceeding, a non-dischargeability proceeding "aris[es] under" the debtor's bankruptcy case. A dispute that arises under or arises in a debtor's bankruptcy case is a component of that larger case, not a separate proceeding within the case. It could therefore be argued that a claim relating to such a matter relates directly to the debtor's case itself, whereas a claim related to a proceeding that itself only "relates to" the debtor's main case does not. Perhaps a more nuanced interpretation of Sasson would be to read it as holding that a district or bankruptcy court can assert "supplemental" jurisdiction over claims relating to proceedings arising under or within the debtor's bankruptcy case.

31

jurisdiction." Pacor, 743 F.2d at 994. If a particular claim does not relate to the debtor's bankruptcy case, i.e., does not affect the administration of the estate, it does not fall within § 1334 no matter how close its connection to the facts underlying a particular adversary proceeding. Under the Pacor test, the court cannot assert "supplemental" jurisdiction over the Investor-Related Claims; therefore, the claims must be dismissed.

C.    Collusive Manufacturing of Jurisdiction

Much of the Defendants' motion is devoted to their theory that any jurisdiction asserted by the court is the product of improper collusion between POA and Beneficial's investors, which arguably bars the assertion of jurisdiction by this court pursuant to 28 U.S.C. § 1359.[18] This issue may very well resurface if POA seeks to reinstate the Investor-Related Claims

---

[18] Section 1359 is applied traditionally to cases where a district court's subject matter jurisdiction is based on diversity of jurisdiction pursuant to 28 U.S.C. § 1332; to this court's knowledge, it has never been applied in a case where a court's jurisdiction was based on the existence of a federal question. Consequently, there is some question as to whether § 1359 should apply to bankruptcy cases at all. See Belcufine v. Aloe, 112 F.3d 633, 637 (3d Cir. 1997) (Alito, J.) (noting "that it was unclear whether [§] 1359 even applied to . . . non-diversity cases").

before the district court.[19]  But there is no need for this court
to decide the issue now, and the court declines to do so.

III

The court made a pro forma determination in a scheduling
order entered in this case that the instant adversary proceeding
was a "core" proceeding as defined by 28 U.S.C. § 157.  That
holding was in error.  As noted at length above, this is a
"related to" proceeding under § 1334, which means that it must
also be a non-core proceeding for purposes of § 157.  See Abbey
v. Modern Africa One, LLC, 305 B.R. 594, 601 (D.D.C. 2004)
("Other proceedings that are otherwise related to title 11 cases
are considered non-core proceedings.").  The court will amend its

---

[19]  The court has serious doubts as to whether the
Defendants could succeed on their "collusiveness" argument in
light of the uncontradicted evidence presented by POA in support
of its contention that the assignment of the Investor-Related
Claims was necessary to craft a confirmable plan of
reorganization for PES and provide the best chance of recovery
for all of PES's creditors (DiCello Aff. ¶¶ 5-13).  Nonetheless,
the court will refrain from further inquiry into this matter in
light of its ruling with regard to subject matter jurisdiction.
The court will ignore the Defendants' misguided standing
argument, which relies almost entirely on a severe misreading of
this court's ruling in Greater Southeast Community Hospital
Corp., for the same reason.

33

scheduling order to correct this error.[20]

IV

For the reasons listed above, the court will grant the
Defendants' motion to dismiss the Investor-Related Claims and
will amend its scheduling order to reflect the true nature of the
court's jurisdiction under 28 U.S.C. § 157. The court will also
forward a copy of this decision and its accompanying order to
Chief Judge Hogan of the District Court so that he can decide
whether to grant the Defendants' motion to withdraw the reference
in light of the conclusions reached herein or withdraw the

---

[20]   The statutory distinction drawn between core and non-
core proceedings in § 157 is the product of the Supreme Court's
ruling in Northern Pipeline Co. v. Marathon Pipe Line Co., 458
U.S. 50 (1982) ("Marathon"), where the Court held that the broad
grant of jurisdiction extended to bankruptcy courts in the
Bankruptcy Reform Act of 1978, Pub. L. No. 95-598 (1979),
violated Article III, § 1 of the Constitution. See id. at 87.
The Court concluded that Congress could not confer "'the
essential attributes of the judicial power' from the Art[icle]
III district court[s]" to federal bankruptcy courts, which are
created under Article I of the Constitution. Id. The Court
distinguished "state-created private rights," which require
Article III adjudication, from "public rights" that "arise
'between the government and others,'" which do not. Id. at 67-
72.

    In response to Marathon, Congress amended the Bankruptcy
Code to provide that bankruptcy courts could enter final
judgments in "core" proceedings that involved public rights, 28
U.S.C. § 157(b), but that bankruptcy courts could only hear and
enter recommended findings of fact and conclusions of law with
respect to private law, "non-core" matters. Id. at § 157(c)(1).
As a matter subject only to a court's "related to" jurisdiction
under § 1334 by definition does not involve public rights created
by Congress (if that were the case, the matter would fall within
the court's "arising under" or "arising in" jurisdiction), such a
matter must be non-core as well.

34

reference <u>sua</u> <u>sponte</u> should the Defendants choose to withdraw their motion.

An order follows.

[Signed and dated above.]

Copies to: All counsel of record.